## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION

| | | |
|---|---|---|
| DENZEL REID (#M-47105 / 160174), | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 17 CV 50305 |
| | ) | |
| V. | ) | |
| | ) | MAGISTRATE JUDGE IAIN D. JOHNSTON |
| SERGEANT BOYD, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Defendants' request for dismissal of the complaint be granted, and that Plaintiff's claims be dismissed without prejudice for failure to exhaust his administrative remedies. Any objection to this Report and Recommendation must be filed by August 31, 2018. Failure to file a timely objection with the district court judge may constitute a waiver of objections, both factual and legal, on appeal. *See* 28 U.S.C. § 636(b)(1)(B),(C); *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 760 n.7 (7th Cir. 2009).

## STATEMENT

Plaintiff Denzel Reid, an inmate in the custody of the Winnebago County Sheriff, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, correctional officers at the jail, violated Plaintiff's constitutional rights by acting with deliberate indifference to his safety. More specifically, Plaintiff alleges that Defendants failed to take reasonable measures to protect him from an attack at the hands of a fellow detainee. Having held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court recommends dismissal of this action for failure of Plaintiff to exhaust administrative remedies before filing suit.

## I. BACKGROUND

Plaintiff has been incarcerated the Winnebago County Jail since February 14, 2016. Plaintiff alleges the following facts in his Complaint, briefly summarized: In March 2016, jail officials placed Plaintiff on the jail's tier 3B. It is "well known" that Plaintiff belongs to the Four Corner Hustler Vicelords, a street gang. (R. 6, Complaint, p. 6, ¶ 10.) Members of the Gangster Disciples, a rival gang, populated the majority of the tier. Gangster Disciples "targeted" Plaintiff upon his arrival on

the tier. (*Id*.) One Gangster Disciple warned Plaintiff that he faced harm unless he moved to a different deck.

In April 2016, Plaintiff submitted an electronic grievance on a jail kiosk. Plaintiff informed jail officials that Gangster Disciple members were threatening him. Correctional officials granted Plaintiff's request to move to a different tier.

In August 2016, Plaintiff received notification that he was returning to tier 3B. Plaintiff protested the move, citing safety and security concerns once again, and calling the officer's attention to his prior grievance. Plaintiff was sent to segregation for refusing his housing assignment. When Plaintiff filed a grievance explaining his situation, he was informed that he would be moved as soon as a suitable pod was found. A week later, Plaintiff moved back to his preferred tier, 3G.

In May 2017, some nine months later, Plaintiff was released from the maximum security/segregation unit. Upon his release, Plaintiff again asked not to be placed on tier 3B. An officer advised Plaintiff that the tier had "changed" since Plaintiff was last there, and that there was a "whole new crowd." (*Id*., p. 9.) Based on the officer's assurances, Plaintiff acquiesced to the housing assignment.

Within the first week of Plaintiff's placement on tier 3B, Gangster Disciples began threatening and bullying him. On May 11, 2017, Plaintiff alerted officials that Gangster Disciples wanted to fight him. The officer to whom Plaintiff spoke callously responded, "There is nothing we can do, so you'd better know how to fight." (*Id*., pp. 10-11, ¶ 20.) The next day Plaintiff filed a grievance to let the jail staff know that he was receiving threats. An officer's response was, "There are gang members on every pod. If you want to be on protective custody, let us know." (*Id*., p. 11, ¶ 21.)

As a safeguard, Plaintiff stayed mostly in his room over the next few weeks. He left his cell only to eat, shower, or meet with his defense attorney. Plaintiff continued to receive threats from Disciple members during this time period. Someone warned Plaintiff that the Disciples planned to "snake" (or sucker-punch) him. (*Id*., ¶ 22.)

On June 7, 2017, Plaintiff asked jail officials to arrange for his move to a different tier. An officer responded that the administration would not move Plaintiff unless he wanted to go to the segregation unit. Plaintiff therefore demanded to be taken to segregation; however, the officer advised him that he would have to do something wrong to trigger a move to the segregation unit.

Later that same day, a fellow inmate punched Plaintiff in his eye with sufficient force to knock him off of his feet. The assailant then inflicted a "flurry" of punches all over Plaintiff's head and body.

In October 2017, Plaintiff initiated this action. Defendants answered the complaint and raised the affirmative defense that Plaintiff had failed to exhaust his administrative remedies prior to bringing suit as required by 42 U.S.C. § 1997e(a). (R. 18, Answer, at p. 13.)

On August 8, 2018, the Court held a *Pavey* hearing relating to Plaintiff's exhaustion of his administrative remedies. *Pavey*, 544 F.3d at 742; *see also Waggoner v. Lemmon*, 778 F.3d 586, 591-92 (7th Cir. 2015) (exhaustion is a preliminary issue that should be resolved before addressing the merits of a complaint). Plaintiff provided the only testimony at the hearing. Defendants introduced as exhibits Plaintiff's "Resident Request Report," Exhibit 1, and the jail's Inmate Handbook, Exhibit 2.

## II. DISCUSSION

The Prison Litigation Reform Act of 1996 ("PLRA") contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007); *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim under Section 1983." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Howard v. Maselko*, No. 11 CV 9278, 2013 WL 1707955, at *2 (N.D. Ill. Apr. 19, 2013) (same).

To satisfy the PLRA's exhaustion requirement, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). An inmate must comply with the established rules established with respect to the form, timeliness, and content of grievances. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). Administrative remedies have not been exhausted unless and until the inmate has given the process a chance to work and followed through with administrative appeals. *Ford*, 362 F.3d at 398-400; *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002)). Prisoners who fail to properly avail themselves of the prison's or jail's grievance process may lose their right to sue. *Massey*, 196 F.3d at 733; *Howard*, 2013 WL 1707955, at *2.

The Winnebago County Jail has an established grievance process that is available to all inmates. *See, e.g., Schaefer v. Spates*, No. 16 CV 50377, 2018 WL 1939331, at *2 (N.D. Ill. Mar. 19, 2018), *report and recommendation adopted,* No. 16 CV 50377, 2018 WL 1932469 (N.D. Ill. Apr. 24, 2018); *see also* Defendants' Exhibit 2, Inmate Handbook. The jail's grievance procedures provide for a three-step process. *Schaefer*, 2018 WL 1939331, at *4. Inmates are encouraged first to resolve

3

problems in an informal manner. *Id.* If the inmate's problem is not settled to his satisfaction, then he may submit a grievance using the inmate kiosk. *Id.* Inmates are required to provide a thorough explanation of the problem in their grievance. *Id.* If the inmate's problem remains unresolved, he may then appeal the grievance decision to the jail superintendent, again using the inmate kiosk. *Id.* The superintendent's (or his or her designee's) decision is final. *Id.* The appeal completes the grievance process.

Because exhaustion is mandatory, the U.S. Supreme Court has held that judge-made exceptions to the requirement are impermissible, even in circumstances where the prisoner makes a reasonable mistake about grievance procedures. *Ross v. Blake*, --- U.S. ---, 136 S.Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

However, by the plain language of the statute, prisoners must exhaust only those administrative remedies that are "available." *Id.* at 1858; *see also* 42 U.S.C. § 1997e(a). Additionally, the failure to exhaust available remedies is an affirmative defense, and correctional officials bear the burden of pleading and proving failure to exhaust. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (citing *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006)); *Jones v. Dart*, No. 14 CV 1929, 2016 WL 1555588, at *2 (N.D. Ill. Apr. 18, 2016) (same) (collecting cases and holding that defendants must prove failure to exhaust by a preponderance of the evidence). In the case at bar, the Court finds that Defendants have met their burden.

### A. Pre-Attack Grievances

Plaintiff never finalized the grievance process before the alleged assault underlying this lawsuit. Plaintiff's complaint and his jail records reflect that he filed at least five grievances concerning enemy gang members in the year before the purported attack. *See* Defendants' Exhibit 1, Resident Request Report, Request No. 423495 (4/20/16) (moved in response); No. 460719 (8/21/16) (response: "when a suitable pod is found you will be moved); No. 460727 (8/21/16) (response: "see other reply"); 460730 (8/21/16) (response: "see other reply"); and No. 533425 (5/12/17) ("There are gang members in every pod. If you want to be on protective custody, please let us know.") [Plaintiff also filed several unrelated grievances concerning problems with his cellmate[s] and conflict with another detainee.] But Plaintiff repeatedly conceded at the hearing that he never appealed any of those grievances.

The Court is troubled by Plaintiff's contention that he filed multiple grievances before his assault, particularly one a month beforehand. If Plaintiff had completed the grievance process before the attack, the Court would not hesitate to find the exhaustion process satisfied. By filing a grievance and pursing an appeal, an inmate satisfies the administrative exhaustion requirement. *Pozo*, 286 F.3d at 1025. In that manner, a prisoner gives correctional officials notice of a problem and

4

the opportunity to rectify it. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013); *Bowers v. Dart*, No. 16 CV 2483, 2018 WL 835219, at *4 (N.D. Ill. Feb. 13, 2018).

Defendants could not reasonably argue that an inmate must wait for actual harm to come to him before filing a grievance. But despite Plaintiff's multiple grievances and multiple contacts with authorities, he affirmatively stated at the *Pavey* hearing that he never filed an appeal. Thus, while the named Defendants might have shown greater compassion in responding to Plaintiff's reports that he was in danger, he never gave grievance officials the opportunity to investigate and address his concerns.

Plaintiff professes that he did not know how to appeal, but that assertion is insufficient to render the grievance process unavailable to him. The U.S. Supreme Court has recognized three circumstances in which an administrative remedy may be "unavailable" to an inmate: (1) when it operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the administrative exhaustion scheme is so opaque that the procedure is essentially "unknowable," so that "no ordinary prisoner can discern or navigate it;" and (3) when correctional officials thwart inmates from using the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-1860.

In the case currently before the Court, Plaintiff admitted that there were kiosks in every pod that detainees could use for submitting grievances. Plaintiff also admitted that he knew how to use the kiosks to file grievances. In addition, Plaintiff acknowledged that he received an Inmate Handbook, *see* Defendants' Exhibit 2, and that he read the section of the handbook outlining the grievance process. Furthermore, despite pleading ignorance to the exhaustion requirement before he filed suit, Plaintiff knew enough to file many, many grievances at the jail (most others about the jail commissary, his placement in disciplinary segregation, medical issues, and further miscellaneous matters). Plaintiff also had the foresight to attach grievances to his complaint. Nothing whatsoever prevented Plaintiff from re-reading the handbook or inquiring about the grievance process. In short, Plaintiff does not suggest either that correctional officials obstructed the grievance process, or that appeal procedures were in any way unavailable to him.

Plaintiff's ignorance of grievance procedures does not constitute grounds for excusing him from proper exhaustion. Therefore, even though Plaintiff filed grievances—and even assuming that it was not a random attack but rather a gang attack, a fact not plain from the pleadings—he failed to finalize the grievance process before the alleged assault. Consequently, the Court has no discretion to consider the substantive merits of his claim. *See, e.g., Waggoner*, *supra*, 778 F.3d at 591-92.

5

**B. Post-Attack Grievances**

The Court likewise finds that Plaintiff failed to exhaust his administrative remedies *after* the alleged attack. At the *Pavey* hearing, Plaintiff confessed that he did not file a grievance complaining of a failure to protect in the weeks or months following the attack because he saw no point in doing so. He admittedly filed a grievance only after he filed suit and ostensibly learned of the exhaustion requirement at a status hearing. And again, Plaintiff admits that he did not appeal the grievance.

Unfortunately, Plaintiff's efforts to grieve the matter giving rise to this lawsuit came too late. The exhaustion of remedies is a *precondition* to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Mlaska v. Shah*, 428 F. App'x 642, 645 (7th Cir. 2011) (unpublished opinion) (citing *Dixon v. Page*, 291 F.3d 485, 490-91 (7th Cir. 2002)). Accordingly, a prisoner's attempt to exhaust his administrative remedies after filing suit does not comply with the PLRA. *Ford*, 362 F.3d at 398; *Mlaska*, 428 F. App'x at 645. The U.S. Court of Appeals for the Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole*, 438 F.3d at 809. "[U]nless the prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo*, 286 F.3d at 1023. "Unexhausted claims are procedurally barred from consideration." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016). Based on his own testimony, Plaintiff filed suit without first exhausting administrative remedies, and indeed did not complete the exhaustion process afterwards.

In sum, based on the evidence presented at the hearing, the Court concludes that Defendants have carried their burden of showing that Plaintiff failed to exhaust administrative remedies that were available to him. This is not a case in which the grievance process was unavailable or "unknowable," as discussed in *Ross*, 136 S. Ct. at 1859-60. Nor is there any evidence that Winnebago County Jail grievance procedures operated as a "dead end," or that correctional officials attempted to thwart Plaintiff's efforts to avail himself of grievance procedures. *See id.*

For these reasons, the Court recommends that Plaintiff's complaint be dismissed without prejudice for failure to exhaust. *See Johnson*, 362 F.3d at 401("[A]ll dismissals under § 1997e(a) should be without prejudice.") But Plaintiff may be able re-file this lawsuit after he has completed the administrative exhaustion process. The jail's grievance procedure introduced at the *Pavey* hearing contains no time frame by which to file a grievance nor appeal the denial of a grievance. If Plaintiff chooses to pursue his claims, though, he should act as quickly as possible in light of the two-year statute of limitations for Section 1983 actions and any applicable tolling rules. *See Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014).

Any objection to this Report and Recommendation must be filed by the date set forth above. Failure to object may constitute a waiver of objections on appeal. *See* 28 U.S.C. § 636(b)(1)(B),(C); *Tumminaro*, 671 F.3d at 633; *Schur,* 577 F.3d at 760 n.7 (7th Cir. 2009).

Dated: 8/16/2018            By: _____

                                Iain D. Johnston
                                United States Magistrate Judge